UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BROWN, an individual,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>SOUTHERN CALIFORNIA IBEW-NECA TRUST FUNDS, an unincorporated association,<br><br>　　　　Defendants. | CASE NO. CV 06-06740 MMM (JCx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

On October 23, 2006, plaintiff James Brown commenced this action against defendant Board of Trustees of the Southern California IBEW-NECA Pension Plan,[1] seeking reinstatement of early retirement benefits to which he claims entitlement under a collectively bargained labor-management trust covering unionized electrical construction workers in Southern California.[2] After consideration

---

[1] Defendant was erroneously sued as Southern California IBEW-NECA Trust Funds.

[2] More specifically, plaintiff seeks an order requiring defendant to pay him all early retirement benefits that have been withheld with interest, to reinstate his right to receive future early retirement benefits, and to declare that he has no obligation to refund any benefits previously paid to him. He also seeks reasonable attorneys' fees and costs. (See Complaint to Recover Pension Benefits at 6.)

of the parties' trial briefs,[3] rebuttal briefs, and the administrative record, the court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

The Southern California IBEW-NECA Pension Plan (the "Plan") was created and is maintained pursuant to collective bargaining. It is administered by defendant Board of Trustees of the Southern California IBEW-NECA Pension Plan (the "Board").[4] Plaintiff James Brown worked for many years prior to his early retirement for various employers that were subject to the Plan.[5] The Plan provides early retirement benefits to participants who are sixty-four years old or younger at the time of retirement provided they refrain form engaging in certain types of proscribed activity.[6] Brown became eligible for early retirement benefits on March 1, 2001 and began to receive such benefits shortly thereafter.[7]

On December 31, 2001, Brown became an employee of Siemens Building Technologies, Inc., whose job was to install HVAC equipment (i.e., equipment that controls heating, ventilation, and air conditioning) in commercial office buildings, and instruct building personnel on its use.[8] On July 1, 2005, the Board advised Brown that his work for Siemens was a disqualifying employment under the Plan; as a result, it suspended benefits payments.[9] Plaintiff timely appealed this decision to the Board's Appeals Subcommittee, which recommended upholding the suspension of benefits in September 2006.[10]

---

[3]The parties originally filed cross-motions for summary judgment but later requested that their memoranda of points and authorities be deemed opening trial briefs.

[4]Plaintiff's [Proposed] Statement of Uncontroverted Facts and Conclusions of Law ("Pl.'s Facts"), ¶ 1; Defendant's Proposed Statement of Uncontroverted Facts and Conclusions of Law ("Def.'s Facts"), ¶¶ 1, 4.

[5]Pl.'s Facts, ¶ 3; Def.'s Facts, ¶¶ 2-3.

[6]Pl.'s Facts, ¶¶ 6, 8; Def.'s Facts, ¶¶ 4-5.

[7]Pl.'s Facts, ¶ 7; Def.'s Facts, ¶ 3.

[8]Pl.'s Facts, ¶¶ 11-12; Def.'s Facts, ¶¶ 6-7.

[9]Pl.'s Facts, ¶¶ 13-14; Def.'s Facts, ¶ 8.

[10]Pl.'s Facts, ¶¶ 9, 28, 30; Def.'s Facts, ¶¶ 9-11.

2

That recommendation was adopted by the Board on September 28, 2006.[11] The denial of benefits was based solely on Brown's purported engagement in activity proscribed by § 9.8(c)(1)(iv) of the Plan.[12] This provision prohibits an early retiree from engaging in "employment as an electrical contractor, including, but not limited to, bidding jobs, performing electrical construction work, hiring employees, leasing buildings or equipment in the name of the electrical company[,] or soliciting work."[13]

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

The Plan is an employee pension benefit plan within the meaning of Section 3(2) of Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2). Brown is a participant in the plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7). The Board is the Plan administrator within the meaning of Section 3(16) of ERISA, 29 U.S.C. § 1002(16). Members of the Board, including members of the Appeals Subcommittee, are fiduciaries of the Plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1102(21). The court has jurisdiction pursuant to Section 502 of ERISA, 29 U.S.C. § 1132.

### B. Standard of Review

---

[11] Pl.'s Facts, ¶ 28; Def.'s Facts, ¶ 11.

[12] Findings & Recommendations of the Appeals Sub-Committee of the Southern California IBEW-NECA Pension Plan Fund in the Appeal of Mr. James Brown ("Appeals Board Decision"), Administrative Record at 447, 458-59.

[13] Southern California IBEW-NECA Pension Plan and Summary Plan Description ("Pension Plan"), Administrative Record at 89, 147. Section 9.8(c)(1)(iii) of the Plan also prohibits an early retiree from "actively seeking employment in the electrical construction contracting industry by means other than the union hiring hall." (*Id.* at 146.)

The parties agree, as did the Board, that the terms of the Plan in effect at the time of Brown's early retirement control the receipt and suspension of his benefits. (See Plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Pl.'s Opening Brief") at 3 (citing *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004)); Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Opening Brief") at 13-16; Appeals Board Decision, Administrative Record at 462.) This is mandated by Section 204(g) of of ERISA (the "anti-cutback" provision), 29 U.S.C. § 1054(g). Thus, amendments to the Plan adopted after Brown's retirement do not affect his entitlement to benefits.

3

Both parties contend that the court should review plaintiff's challenge to the Board's suspension of benefits under the Plan for abuse of discretion.[14] It is not entirely clear that this is the appropriate standard of review.[15] This is of no significance, however, as the court's resolution of Brown's claim would be no different even were it to apply the more exacting *de novo* standard. Cf. *Gillam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) ("We need not decide as a matter of first impression in this circuit whether the *Firestone* standard-of-review framework applies to [the plan at issue] or, if it does, whether the district court should have applied an abuse of discretion rather than a de novo standard of review. The question in this case turns on the interpretation of the term 'earnings' under the [plan] and we would reach the same conclusion under either standard of review," citing *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir.1997) (declining to rule on whether the de novo or abuse of discretion standard of review applied, because the former employees' claims failed even under the more stringent de novo standard)).

Under the abuse of discretion standard, an ERISA plan administrator abuses its discretion, *inter alia*, if it "construes provisions of the plan in a way that conflicts with the plain language of the plan." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 944 (9th Cir. 1999); *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 458 (9th Cir.1996); *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1472 (9th Cir. 1993). The court's inquiry "'is not into [whether the plan administrator's] interpretation of the plan . . . is [the] most persuasive, but whether [its] interpretation is unreasonable.'" *Saffle*, 85 F.3d at 458 (quoting *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 552

---

[14]Pl.'s Opening Brief at 6; Def.'s Opening Brief at 2 & n.3.

[15]The court reviews *de novo* the denial of benefits by the administrator of an employee benefit plan *unless* "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Brunch*, 489 U.S. 101, 115 (1989); accord *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999) (en banc). Here, the Plan names members of the Board fiduciaries of the Plan and provides that the Board "shall administer the Plan according to the powers and duties granted [it] in accordance with the [Agreement and Declaration of Trust of the Southern California, IBEW-NECA Pension Plan]." (Pension Plan, Administrative Record at 144.) The Plan itself does not give the Board the type of discretionary authority that would result in application of an abuse of discretion standard, however, and the parties have not submitted a copy of the Agreement and Declaration of Trust so that the court can determine whether it confers discretionary authority on the Board.

4

(9th Cir. 1995)). When a plan is silent as to the definition of a term, the court must given that term its ordinary and popular meaning. See *Gilliam*, 488 F.3d at 1194 (citing *Richardson*, 112 F.3d at 985 ("[W]e have held that terms in an ERISA plan should be interpreted 'in an ordinary and popular sense as would a [person] of average intelligence and experience,'" quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990) (second alteration original)); see also *Swaback v. Am. Informational Techs. Corp.*, 103 F.3d 535, 541 (7th Cir. 1996) (noting that plan terms must be construed "in an ordinary and popular sense as a person of average intelligence and experience would"). In addition, the court must "endeavor to interpret each provision consistent with the entire document such that no provision is rendered nugatory." *Gilliam*, 488 F.3d at 1194.

### C. Whether the Board Abused its Discretion in Suspending Brown's Benefits

Plaintiff argues that the Board abused its discretion in determining that his employment with Siemens fell within the ambit of § 9.8(c)(1)(iv) of the Plan.[16] The court agrees. As noted, that provision of the Plan prohibits early retirees from engaging in "*employment as an electrical contractor*, including, but not limited to, bidding jobs, performing electrical construction work, hiring employees, leasing buildings or equipment in the name of the electrical company[,] or soliciting work" (emphasis added). The provision quite plainly proscribes self-employment in the electrical construction industry as an independent contractor. The Board, however, focused exclusively on the prohibition against "performing electrical construction work" in concluding that Brown's employment activity was prohibited by § 9.8(c)(1)(iv).[17] This was unreasonable. An individual does not become an "electrical contractor" merely because he "perform[s] electrical construction work." See generally CAL. LAB. CODE § 2750.5.[18] Rather, as § 9.8(c)(1)(iv) itself makes clear, more is required, e.g., bidding on jobs

---

[16] Pl.'s Opening Brief at 7-8.

[17] Appeals Board Decision, Administrative Record at 459.

[18] This statutory provision specifies that the following factors are probative of independent contractor status:
"(a) That the individual has the right to control and discretion as to the manner of performance of the contract for services in that the result of the work and not the means by which it is accomplished is the primary factor bargained for[;] (b) That the individual is customarily engaged in an independently established business[;] and (c) That the

5

1  and hiring employees.  Brown does neither of these.  He is merely a regular employee of Siemens,
2  which *itself* performs "electrical construction contracting work," as the Board found.[19]

3  The Board based its decision largely on the fact that the Plan also prohibits early retirees from
4  "actively seeking employment in the electrical contracting industry by means other than the union hiring
5  hall."[20]  The Board reasoned that it would be anomalous simultaneously to permit early retirees to work
6  actively in the "electrical contracting industry," but to prohibit them from merely "seeking
7  employment."[21]  This argument is not without appeal.  The court, however, "'must enforce [the Plan]
8  as drafted by the parties, according to the terms employed, and may not make a new contract for the
9  parties or rewrite their contract while purporting to interpret or construe it.'" *Gilliam*, 488 F.3d at 1195
10 (quoting 11 WILLISTON ON CONTRACTS § 31:5, at 299 (4th ed. 1999)).  Here, equating "employment in
11 the electrical contracting industry" with "employment as an electrical contractor" is contrary to the plain
12 language of the Plan and ignores the ordinary and popular meaning of the term "contractor."  Stated

---

> individual's independent contractor status is bona fide and not a subterfuge to avoid
> employee status."  CAL. LABOR CODE § 2750.5.

The statute continues, stating that

> "bona fide independent contractor status is further evidenced by the presence of
> cumulative factors such as substantial investment other than personal services in the
> business, holding out to be in business for oneself, bargaining for a contract to complete
> a specific project for compensation by project rather than by time, control over the time
> and place the work is performed, supplying the tools or instrumentalities used in the
> work other than tools and instrumentalities normally and customarily provided by
> employees, hiring employees, performing work that is not ordinarily in the course of the
> principal's work, performing work that requires a particular skill, holding a license
> pursuant to the Business and Professions Code, the intent by the parties that the work
> relationship is of an independent contractor status, or that the relationship is not
> severable or terminable at will by the principal but gives rise to an action for breach of
> contract." *Id.*

[19]See Appeals Board Decision, Administrative Record at 457 ("Your Sub-Committee believes that the evidence as a whole in this matter is overwhelming that Siemens is in fact involved in the electrical construction contracting industry").

[20]*Id.* at 459 (quoting Pension Plan, Administrative Record at 55).

[21]*Id.* ("Any other interpretation of Section 9.8(c)(1) as a whole would yield the absurd result that looking for electrical construction work would result in suspension while finding and performing such work would not").

6

differently, the court would be rewriting the Plan if it were to conclude that the Board did not abuse its discretion in suspending Brown's benefits, notwithstanding the potentially anomalous result that follows.[22]

### III. CONCLUSION

For the foregoing reasons, the court concludes that the Board abused its discretion in suspending Brown's early retirement benefits. The court accordingly directs plaintiff, within **seven days** of the date of entry of this order, to submit supplemental briefing – including declaration(s), documentation, and a proposed judgment – addressing: (1) the amount of early retirement benefits withheld from him, (2) the rate of prejudgment interest to which he claims entitlement, and (3) his reasonable attorneys' fees and costs. Defendant is directed to file any opposition to plaintiff's supplemental briefing within **fourteen days** of the date of entry of this order. The court will deem defendant's failure to file opposition consent to entry of the proposed judgment lodged by plaintiff. Alternatively, the parties can file a stipulated form of proposed judgment, reserving all rights to contest the court's substantive findings, within **seven days** of the date of entry of this order. Following a consideration of the parties' stipulated judgment and/or supplemental briefing, the court will issue a final judgment for plaintiff.

DATED: January 10, 2008

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[22] The court's conclusion that the Board abused its discretion in suspending Brown's benefits is supported by the fact that, in 2002, the Plan was amended explicitly to prohibit an early retiree from working, *inter alia*, as an "employee . . . in the jurisdiction of any Union whose members are Participants in [the] Plan . . . in work of the type performed by Participants of the Plan . . . which requires directly or indirectly the use of the same skills performed by Participants of the Plan." (See Amendment No. 6 to the Southern California IBEW-NECA Pension Plan, Administrative Record at 308, 309.) If the pre-amendment version of the Plan applicable to Brown prohibited early retirees from engaging in "employment in the electrical contracting industry," as the Board concluded, then this 2002 amendment to the Plan would have been unnecessary.